# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Target Account: Discord Account with Username and<br>User ID: bLuE_LeGoOn#2472; 687497385475047424 | )<br>)<br>)<br>)<br>)<br>) |

Case No.  '23 MJ00820

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B-1, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252 & 2252A | Certain activities relating to materials involving sexual exploitation of minors and child pornography |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Celia Rosa, NCIS
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:  _____ March 9, 2023 _____

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Mitchell D. Dembin, United States Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Celia Rosa, upon being duly sworn do hereby state that the following is true to my knowledge and belief:

### INTRODUCTION

1.     I am a Special Agent (SA) with the Naval Criminal Investigative Service (NCIS). I have been employed with NCIS since 2019 and am assigned to the General Crimes Squad at Marine Corps West Field Office in Camp Pendleton, California. I regularly investigate felony crimes having a Department of the Navy nexus, to include, but not limited to, death investigations, adult and child sexual assaults, domestic and aggravated assaults, and child abuse and child exploitation and child sexual abuse material (CSAM) investigations. I am also currently assigned to the San Diego Internet Crimes Against Children (ICAC) Task Force. This task force includes members of the San Diego Police Department, San Diego County Sheriff's Department, U.S. Postal Inspection Service, Federal Bureau of Investigation, NCIS, U.S. Attorney's Office and the San Diego County District Attorney's Office. I graduated from the Criminal Investigator Training Program, and NCIS Special Agent Basic Training Program at the Federal Law Enforcement Training Center (FLETC). I received training in various topics, including but limited to: constitutional and criminal law, operational activities, physical tactics, behavioral sciences, use of force, and ethics and core values. Prior to graduating from FLETC, I received a master's degree in Homeland Security and Emergency Preparedness from Virginia Commonwealth University. I was a member of the Marine Corps West Major Case Response Team (MCRT) which presented me with multiple opportunities to participate in several search warrants and command authorizations for search and seizures as part of felony level criminal investigations. Additionally, I have participated in the performance of my duties in the successful seizure of both physical and electronic/digital evidence.

2.      I make this affidavit in support of an application by the United States of America for a search warrant to search the following (collectively the **Target Accounts**):

- Discord, Inc., 444 De Haro, Suite 200, San Francisco, CA 94107, as described in Attachment A-1 to search for information associated with the following Discord account Username and User ID:

     bLuE_LeGoOn#2472; 687497385475047424

- Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103, as described in Attachment A-2 to search for information associated with the following Twitter User ID, Username, and Account ID:

     1258129134; cordb48; cordb48-682669180550994

from March 1, 2022 to the present, for items that constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252, and 2252A, as described more fully in Attachments B-1 and B-2.

3.      The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers and the San Diego ICAC Task Force, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

1

## BACKGROUND ON DISCORD

2   4.   Discord is a free multimedia messaging application (app) developed by

3   Discord Inc. The Discord app is available through Windows, macOS, Android, iOS,

4   iPadOS, Linux, and in web browsers.

5   5.   After Discord is downloaded, the individuals (Users) create an account,

6   which can then be used to create and exchange multimedia messages. Accessing a

7   Discord account and its messaging contents constitute "electronic communications,"

8   within the meaning of 18 U.S.C. §§ 3123 [See 18 U.S.C §§ 3127(1) and 2510 (12)].

9   6.   Users communicate with voice calls, video calls, text messaging, media

10   and files in private chats or as part of communities called "servers." Servers are a

11   collection of persistent chat rooms and voice chat channels.

12   7.   Channels may be either used for voice chat and streaming or for instant

13   messaging and file sharing. The visibility and access to channels can be customized

14   to limit access from certain users, for example, marking a channel "NSFW" (Not

15   Safe For Work) requires that first-time viewers confirm they are over 18 years old

16   and willing to see such content.

17   8.   Direct messages in Discord allow people to text, share files, live stream

18   and call others privately outside of servers. An added feature in Discord direct

19   messages is the ability to create message groups of up to 10 users. The act similar to

20   a server's text channel, with the ability to initiate a call simultaneously for all the

21   members in a direct message group (in servers, people can only join voice channels

22   but cannot be called into).

23   9.   To create a Discord account, users register for Discord with an email

24   address and must create a username. To allow multiple users to use the same

25   username, they are assigned a four-digit number called a "discriminator," prefixed

26   with "#" which is added to the end of their username. Both at the server and the user-

27   level, Discord allows users to connect these to their Twitch of other gaming service

accounts. Users can assign themselves a profile picture. Subscribers for Distro Nitro, part of Discord's monetization plan, can use animated profile pictures.

10.     Discord stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control address and the International Equipment Identifier or Mobile Equipment Identifier of devices used to access Discord. In the event the Discord user's application crashes, the company also collects a list of other installed applications on the device to detect any potential software conflicts.

11.     Discord also may communicate with the user, by email or otherwise. Discord collects and maintains copies of communications between Snapchat and the user.

12.     Based on the information above, the computers of Discord, Inc. are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Discord, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## BACKGROUND ON TWITTER

13.     Twitter is a social network which may be accessed by desktops, laptops, tablets, and smartphones over the internet and mobile networks. I know from my training, experience and research of Twitter that it is a real-time global information network that lets users create and share ideas and information instantly. People and organizations send 140-character messages (known as "Tweets") through Twitter's website and mobile site, client applications (e.g., Twitter for Android; Twitter for

iOS), or any variety of third-party applications. Users are able to share both alphanumeric messages, as well as multimedia content, including videos and photographs. Twitter also owns and maintains a related application called Periscope, which Twitter, Inc. identifies as a "standalone mobile service that lets users create and share real-time video broadcasts." Because the services are owned by the same parent company and share many inter-connected features, such as the ability to share the same multimedia content on both applications, it is your affiant's opinion that records and data connected to the target account(s) relevant to the investigation will be found not just on Twitter, but also Twitter, Inc.'s subsidiary application products, such as Periscope and/or Vine (a similar video sharing application owned by Twitter, Inc. that has since been shut down, although Twitter, Inc. maintains an archive of Vine and its content).

14.     After registering to use Twitter, users can create a profile indicating their name, location, email address, phone number, and other basic user information. Users can add other users as "friends" or "followers" or "contacts", exchange messages via the application's direct messaging feature, send and post previously recorded videos, live videos, post status updates that include digital photos, videos, and hyperlinks which may include any metadata such as location that the user transmitted when he or she uploaded the photo or video. Via the application and website, users can elect to receive notifications when others update their profiles or make posts. In addition, Twitter users can add their geographic locations to their posts, thereby revealing their geographic locations at particular dates and times. Twitter also stores a variety of metadata from the original content uploaded by users, which can include location information. Twitter enables users to choose their own privacy settings and choose who can see specific parts of their profile. Additionally, users can "mention" another user in videos, photos, and posts. Mentioning another user in a post is a manner of making the posts stand out faster to the mentioned user.

15.     Twitter asks users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name (but may also include an alias or pseudonym), birth date, gender, contact e-mail addresses, passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. If a Twitter user does not want to interact with another account user of the same, the first user can "block" the second user from seeing his or her account.

16.     Twitter also retains Internet Protocol ("IP") logs for a given user identity or IP address. These logs may contain information about the actions taken by the user identity or IP address on the aforementioned social media platforms, including information about the type of action, the date and time of the action, and the user identity and IP address associated with the action. For example, if a user views an account profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

17.     The Twitter application allows users to allow the applications to access and upload the user's phone contacts list as well as their contact lists for other social media applications, such as Facebook or Instagram. This is done to allow the user to locate other people in their contact list, whether on their phone or in another social media application, which also use the Twitter application. I know that the contacts lists are stored by social media companies and can be provided to law enforcement upon proper demand.

18.     Twitter typically retains additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, social media account users may communicate directly with Twitter about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from

other users. Social networking providers like Twitter typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

19.     As explained herein, information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling investigators to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Twitter user's Internet Protocol (IP) log, stored electronic communications, and other data retained by the social media platforms can indicate who has used or controlled the social media account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, videos and photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the social media account at a relevant time.

20.     Further, Twitter account activity can show how and when the account was accessed or used. For example, as described herein, Twitter logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Twitter access, use, and events relating to the crime under investigation.

21.     Additionally, these social media platforms typically build geo-location into some of its services. Geo-location allows, for example, users to "tag" or identify their location in posts and allows other social media account users to see one

another's location. This geographic and timeline information may tend to either inculpate or exculpate the Twitter account owner.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

22.    On September 1, 2022, I received NCMEC CyberTipline Report #119346683.  The CyberTipline report detailed on or about March 7, 2022 through March 9, 2022, a Dropbox user uploaded one image of apparent child pornography via the Dropbox application. Dropbox reported the upload occurred from Screen/User Name "Cord Burns" with a listed email address of 8qtdcprcq4@privaterelay.appleid.com, and User ID: 4440445824.  The IP addresses identified in the report were 128.177.55.99 and 166.205.147.86. A query of the IP addresses revealed one IP address was located in Quantico, Virginia, and the second IP address was located in Maryland.

23.    I received an additional NCMEC CyberTipline Report #127777122. CyberTipline Report #127777122 detailed on or about June 22, 2022 through June 24, 2022, a Dropbox user uploaded four video files of apparent child pornography via the Dropbox application. Dropbox reported the upload occurred from Screen/User Name "Cord Burns" with a listed email address of cordb48@gmail.com, and User ID: 4444453296.  The IP Addresses identified in the report were 128.177.55.110, 184.188.64.125, 184.188.64.87, and 184.188.64.130, 184.188.64.115. A query of the IP addresses revealed one IP address was located in Quantico, Virginia, and the other four IP addresses were associated with Camp Pendleton, Oceanside, California.

24.    Queries of a Marine Corps database identified LCpl Cord BURNS (BURNS), USMC, 3rd Battalion, 1st Marines (3/1), 1st Marine Division (1st MARDIV) was associated with the email address cordb48@gmail.com. Additional queries revealed BURNS' pay entry date for the United States Marine Corps

(USMC) was April 22, 2019 and his previous duty station was Marine Corps Base Quantico, VA from approximately October 2019 through April 2022.

25.     I reviewed the image and videos for each CyberTipline report.  Based on my training and experience, I found the depictions were child pornography as defined by 18 U.S.C. § 2256.  Three of the files are described as follows:

| File Name | File Description |
|---|---|
| 1st_studio_-_siberian_mouse_-_hd_97_ev.MP4 | This video depicts a pubescent female engaging in masturbation of her genitals. |
| 22_2.MP4 | This video depicts an adult male engaging sexual intercourse with a prepubescent female. |
| 656.MP4 | This video depicts an adult male anally penetrating a prepubescent female. |

26.     On October 20, 2022, SA Matthew Armstrong and I interviewed BURNS at the NCIS Offices located on Camp Pendleton.  BURNS was advised of his rights and proceeded to waive those rights and agree to speak with us.  BURNS admitted that he viewed and was in possession of what he thought was child pornography on approximately five to ten occasions between April and June 2022. BURNS stated he clicked on various links via Twitter, which prompted him to download Mega, Dropbox, and Discord. BURNS stated upon downloading the aforementioned applications, he observed various folders with file names containing random numbers and letters. According to BURNS, he clicked on the folders and observed various files. BURNS stated upon clicking on some of the files within the folders, he observed what he thought was child pornography. BURNS stated he did not intend to search for and discover child pornography; however, he continued to view other files within the folders out of his curiosity to find new pornography. BURNS stated he subsequently deleted Dropbox and Mega because he did not want

to get into trouble for being in possession of suspected child pornography. BURNS admitted that he engaged in this activity on his cellular phone on each occasion he accessed the suspected child pornography. BURNS additionally stated since accessing the suspected child pornography, he performed an iCloud backup of his cellular phone. BURNS stated when he downloaded MEGA, he created a MEGA account utilizing his personal email address cordb48@gmail.com. When asked for the MEGA password, BURNS stated he created the account without setting a password, therefore, he was unable to provide it to us. Additionally, BURNS stated when he downloaded Discord, he created a Discord account utilizing his personal email address cordb48@gmail.com.

27.     On the day of his interview, BURNS signed a Permissive Authorization for Search and Seizure (PASS) for his cellular phone. (Agent Note: Prior to the start of the interview, SA Armstrong and I placed BURNS' cellular phone into a secured wall locker outside of the interview room, which was seized from his person upon arrival to the NCIS main office.) During his interview, SA Armstrong and I asked BURNS if he still maintained suspected child pornography on his cellular phone, at which point BURNS stated he never saved any files of suspected child pornography to his cellular phone. BURNS further stated all of the files of suspected child pornography he accessed were solely maintained within the various applications (i.e. Mega, Dropbox, and Discord). Additionally, during his interview, BURNS stated he had his cellular phone for approximately one year. Pursuant to the PASS, Digital Forensic Examiner (DFE) Pat Lim, conducted a forensic data extraction of BURNS' cellular phone. A preliminary review of the forensic data extraction of BURNS' cellular phone revealed approximately four to five video files of suspected child pornography.

28.     Approximately a week after his interview, BURNS arrived at the NCIS Office and requested an update regarding the forensic data extraction of his cellular

phone. I advised BURNS the forensic data extraction was completed; however, I was unable to return his cellular phone due to the discovery of suspected child pornography on the forensic data extraction. BURNS subsequently requested to revoke the PASS for his cellular phone. No additional forensic data extractions or reviews and examinations of BURNS' cellular phone occurred after BURNS revoked his PASS.

29. On November 16, 2022, I served a subpoena request to Discord for subscriber information for the Discord account created by BURN's personal email address cordb48@gmail.com. On November 17, 2022, I received a document containing subscriber information, IP addresses, and sessions dates and times for the aforementioned account from Discord. The subpoena return revealed the following subscriber information for the Discord account associated with BURNS' personal email address:

| User ID: | 687497385475047424 |
|---|---|
| Username: | bLuE_LeGoOn#2472 |
| Email: | cordb48@gmail.com |
| Email Verified: | Yes |
| Phone Number: | +16167455038 |

In addition to the above subscriber information, the subpoena return also revealed several session dates and times ranging from May 21, 2022 through November 15, 2022, as well associated IP addresses for each session. Of note, there were several session times identified on June 23, 2022 through June 24, 2022.

30. On December 1, 2022, I obtained a search warrant for the search of BURNS' cellular phone. I provided DFE Pat Lim with the aforementioned search warrant, at which point the forensic data extraction and subsequent review and

examination continued. The examination of BURNS' cellular phone revealed 272 suspected child sexual abuse material (CSAM) picture files and 904 suspected CSAM video files, all of which were located in cache directories associated with the applications, Discord and Twitter. The CSAM files included what appeared to be toddlers, pubescent, and teen males and females engaged in explicit sexual acts with other minors, adults, and animals. Some of the identified CSAM files also included matching metadata resource files. Resource files contain information related to the webpages in which data is downloaded. This includes the site the data was obtained from, download times, file names, etc. Further review of the forensic data extraction revealed some of the messages and image files contained advertising for "cp video," "CP and Teen Leaks." Based on hash comparisons, there were twelve files within BURN's cellular phone, which were exact matches for the four video files identified in CyberTipline Report #127777122. DFE Pat Lim discovered the twelve files within Discord cache folders. Of note, there were CSAM files in cache folders for Discord with creation dates ranging from May 21, 2022 through October 17, 2022. DFE Pat Lim additionally identified approximately 105 CSAM files with matching resource files in cache folders for the Twitter application. The Twitter resource files indicated the files were initially accessed between August 26, 2022 through September 17, 2022. Generally, the file system dates (created/modified) of a cache file indicate when the corresponding webpage was accessed, which in this case, was the application page of Discord and Twitter on BURNS' cellular phone. Additional review of BURNS' cellular phone confirmed the same user account information for the Discord account associated with BURNS' email address as previously identified in the Discord subpoena return on November 17, 2022, as well as the following user account information for the Twitter account associated with BURNS:

| Username: | cordb48 |
|-----------|---------|

| User ID: | 1258129134 |
|---|---|
| Account ID: | cordb48-682669180550994 |

31.     As a result of my training and experience in child sexual exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the sexual exploitation of minors:

a.     Individuals who sexually exploit children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.     Individuals who sexually exploit children may collect sexually explicit or suggestive materials and oftentimes use these materials for their own sexual arousal and gratification. Furthermore, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts. Many of these communications are done online via email or instant messaging.

c.     Individuals who sexually exploit children almost always possess and maintain their "hard copies" of child pornographic material and other images of children used in their sexual exploitation, that is, their pictures, films, videos, correspondence, mailing lists, etc., in the privacy and security of their home or secure online accounts. These individuals typically retain this information for many years.

d.     Likewise, individuals who sexually exploit children often maintain their child pornography, other images of children, and discussions

about the sexual exploitation of children in a safe, secure and private environment, such as an online account, computer, cellular phone, or in their residence. These collections are often maintained for several years and are kept accessible, to enable the collector to view this material, which is valued highly.

e. Individuals who sexually exploit children often correspond with and/or meet others to share information and materials; are rarely able to completely destroy correspondence from other child pornography distributors/collectors; conceal correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography or the sexual exploitation of children.

f. Individuals who sexually exploit children prefer not to be without their child pornography and other images of children for any prolonged time period. Storage of this content in email accounts gives the offender the ability to access it from any computer.

g. Oftentimes, individuals who sexually exploit children will download and store images and communications of children they know or with whom they have communicated. These images many not necessarily be pornographic or obscene in nature, however they are often used for their own sexual gratification.

32. Individuals who sexually exploit children often use the internet, to include email and social media messages, to arrange and receive travel documents, tickets, reservations, hotels, provide payments for services, and arrange meeting locations to facilitate the sexual exploitation of children.

33. Email and social media users, to include individuals who sexually exploit children, often save online messages for extended periods of time. This

information is usually saved automatically for the convenience of users. During the course of my investigative duties, I have reviewed dozens of email and social media accounts, many of which contain messages that date back to the creation of the account. Furthermore, online users communicating with other like-minded individuals often save messages so they can keep track of communications and easily re-contact each other.

34.     Based on the foregoing information, there is reason to believe the user of the Discord account with username bLuE_LeGoOn#2472 and the user of the Twitter account with username cordb48 is, BURNS, who is an individual who sexually exploits children, in that files of child pornography were received, accessed, and viewed as detailed above. Based thereon, I submit there is probable cause to believe evidence pertaining to violations of 18 U.S.C. §§ 2252, and 2252A, will be found within the accounts.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

35.     Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Discord, Inc. and Twitter, Inc. (hereinafter "the internet service providers" or "the ISPs") are not. It would be inappropriate and impractical for federal agents to search the vast computer network of the ISPs for the relevant accounts and then to analyze the contents of those accounts on the premises of the ISPs. The impact on the ISPs business would be disruptive and severe.

36.     Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the ISPs as described in Attachments B-1 and B-2. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of the ISPs, to protect the privacy of ISP

15

subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, the Federal Bureau of Investigation seeks authorization to allow the ISPs to make a digital copy of the entire contents of the account(s) subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be imaged, and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B-1 and B-2. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

37.    Analyzing the data to be provided by the ISPs may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. The ISPs do not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

38.    Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data

analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by the ISP, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

39.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

40.     All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## GENUINE RISK OF DESTRUCTION OF DATA

41.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. Furthermore, based on my training and experience, I know electronically stored data can also exist on a subject's computers. In this case, if the subjects receive advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence. As such, I submitted a preservation request to Discord on October 23, 2022 and a subsequent extension preservation request on December 23, 2022. I also submitted a preservation request to Twitter on January 18, 2023.

## PRIOR ATTEMPTS TO OBTAIN DATA

42.     The United States has not attempted to obtain this data by other means.

## REQUEST FOR SEALING AND PRECLUSION OF NOTICE

43.     This is an ongoing investigation in which the target is aware of, but may not know the scope or breadth of the investigation to date. It is also unknown if there are additional victims or targets. It is very likely, based upon the above, that evidence of the crimes under investigation exists on computers subject to the control of the targets.  There is reason to believe, based on the above, that premature disclosure of the existence of the warrant will result in destruction or tampering with that evidence and seriously jeopardize the success of the investigation. Accordingly, it is requested that this warrant and its related materials be sealed until further order of the Court. In addition, pursuant to 18 U.S.C. § 2705(b), it is requested that this Court order the electronic service provider to whom this warrant is directed not to notify anyone of the existence of this warrant, other than its personnel essential to compliance with the execution of this warrant, until September 8, 2023, absent further order of the court.

//
//
//
//
//
//
//
//
//
//
//
//
//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## CONCLUSION

44.     Based on the foregoing, I submit there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A, as described in Attachment B-1 and B-2, will be found at the property to be searched, as provided in Attachment A-1 and A-2.


_____
Celia M. Rosa, Special Agent
Naval Criminal Investigative Service


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 9th day of March, 2023.


_____
HONORABLE MITCHELL D. DEMBIN
United States Magistrate Judge

19

## ATTACHMENT A-1

### ITEMS TO BE SEARCHED

This warrant applies to information associated with the following Discord account Username and User ID:

bLuE_LeGoOn#2472; 687497385475047424

that is stored at premises owned, maintained, controlled, or operated by Discord, Inc., a company headquartered at 444 De Haro Street, Suite 200, San Francisco, CA 94107.

1

## **ATTACHMENT B-1**

**I.      Service of Warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of Discord, Inc. ("Discord"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Discord, or have been preserved under 18 U.S.C. § 2703(f), Discord is required to disclose the following information to the government for each account listed in Attachment A from March 1, 2022, to the present:

**II.     INFORMATION TO BE DISCLOSED BY DISCORD:**

a.      All contact and personal identifying information;

b.      All activity logs for the account and all other documents showing the user's Discord activities;

c.      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

d.      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Discord user identification numbers; groups and networks of which the user is a member, including the groups' Discord group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Discord applications;

e.      All basic subscriber information,

f.      All call detail records,

g. All detailed message logs,

h. All content, including but not limited to message content,

i. All records or other information regarding the devices and internet browsers associated with, or used in connection with, that account, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

j. All other records and contents of communications and messages made or received by the user, including all messages, chat history, video and voice calling history, and pending "Friend" requests;

k. All "check ins" and other location information;

l. All IP logs, including all records of the IP addresses that logged into the account;

m. All past and present lists of friends created by the account;

n. All records of Discord searches performed by the account;

o. The types of service utilized by the user;

p. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

q. All privacy settings and other account settings, including privacy settings for individual Discord posts and activities, and all records showing which Discord users have been blocked by the account;

r. All records pertaining to communications between Discord, Inc., and any person regarding the user or the user's Discord account, including contacts with support services and records of actions taken.

3

### III.   INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section II that constitutes evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A, involving the following Discord user accounts:

bLuE_LeGoOn#2472; 687497385475047424

from March 1, 2022, to the present, including, for each user ID identified on Attachment A, information pertaining to the following matters:

1. Evidence reflecting use, dominion and control of the account and communications, records, or data including but not limited to text messages, photographs, audio files, videos, or location data:

   a.   tending to indicate efforts to distribute, receive, possess or view images of minors engaged in sexually explicit conduct;

   b.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate the presence of images of minors engaged in sexually explicit conduct;

   c.   tending to identify co-conspirators, criminal associates, or others involved in the distributing, receiving or possessing of images of minors engaged in sexually explicit conduct;

   d.   tending to identify travel to or presence at locations that concern the existence of images of  minors engaged in sexually explicit conduct;

   e.   tending to identify the user of, or persons with control over or access to, the subject phone; or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation, receipt or modification of communications, records, or data above.